# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **BRETT BENJAMIN PHILLIPS,** | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 2:13cv00041 |
| | ) | **MEMORANDUM  OPINION** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

## *I. Background and Standard of Review*

Plaintiff, Brett Benjamin Phillips, ("Phillips"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze,* 368 F.2d 640, 642

Case 2:13-cv-00041-PMS   Document 19   Filed 01/06/15   Page 1 of 21   Pageid#: 699

(4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Phillips protectively filed his applications for SSI and DIB[1] on November 10, 2008, alleging disability as of November 15, 2002, due to severe active ulcerative colitis, back, hip, leg and ankle pain, "nerves," anxiety, depression, bipolar disorder and weight loss. (Record, ("R."), at 226-34, 261, 266.) The claims were denied initially and upon reconsideration. (R. at 127-31, 134-38, 143-44, 146-50.) Phillips then requested a hearing before an administrative law judge, ("ALJ"). (R. at 151-52.) A video hearing[2] was held on December 21, 2011, at which Phillips was represented by counsel. (R. at 29-56.)

By decision dated January 9, 2012, the ALJ denied Phillips's claims. (R. at 12-23.) The ALJ found that Phillips met the disability insured status requirements of the Act for DIB purposes through December 31, 2006. (R. at 15.) The ALJ found that Phillips had not engaged in substantial gainful activity since November 15, 2002, the alleged onset date. (R. at 15.) The ALJ found that the medical evidence established that Phillips had severe impairments, namely ulcerative colitis, degenerative disc disease, degenerative joint disease, major depressive disorder, panic disorder, bipolar disorder, pain disorder and borderline intellectual functioning, but the ALJ found that Phillips did not have an impairment or

---

[1] Phillips previously filed applications for DIB and SSI on April 13, 2000. (R. at 117.) The claims were denied initially and on reconsideration. (R. at 117.) By Decision dated January 19, 2001, the ALJ denied his claims. (R. at 117-23.) There is no evidence that Phillips appealed this decision.

[2] A video hearing was scheduled for August 17, 2011; however, due to technical problems, the hearing was postponed. (R. at 12.)

-2-

combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.) The ALJ found that Phillips had the residual functional capacity to perform simple, unskilled light work,[3] that required no more than casual interaction with others. (R. at 19.) The ALJ found that Phillips was unable to perform his past relevant work. (R. at 22.) Based on Phillips's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that a significant number of jobs existed in the national economy that Phillips could perform, including jobs as a cleaner, a mail clerk and a packer. (R. at 22-23.) Thus, the ALJ concluded that Phillips was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2014).

After the ALJ issued his decision, Phillips pursued his administrative appeals, (R. at 7, 341-42), but the Appeals Council denied his request for review. (R. at 1-5.) Phillips then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2014). This case is before this court on Phillips's motion for summary judgment filed February 26, 2014, and the Commissioner's motion for summary judgment filed March 31, 2014.

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2014).

Case 2:13-cv-00041-PMS   Document 19   Filed 01/06/15   Page 3 of 21   Pageid#: 701

## II. Facts

Phillips was born in 1974, (R. at 226, 231), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). Phillips has a high school education, he attended special education classes, and he has vocational training in sheet metal. (R. at 45, 273.) He has past work experience as a tree trimming foreman and tree trimmer in the tree service industry. (R. at 50, 267.)

Vocational expert, Robert W. Jackson, testified at Phillips's hearing. (R. at 49-55.) The ALJ asked Jackson to consider a hypothetical individual who could perform simple, routine, unskilled light work with only occasional interaction with others, such as the public, co-workers and supervisors. (R. at 51.) Jackson testified that such an individual could not perform any of Phillips's past work. (R. at 52.) Jackson identified jobs that existed in significant numbers in the national or regional economy that such an individual could perform, including jobs as a cleaner, a mail clerk and a packer. (R. at 52.) Jackson stated that there would be sedentary[4] jobs available that the individual could perform should the individual be limited as indicated in the August 27, 2011, assessment of Dr. Kevin Blackwell, D.O. (R. at 52-54, 601-05.) Jackson stated that such jobs included a material handler, a general production worker and a telephone order clerk. (R. at 53-54.) Jackson also stated that there would be no jobs available that the individual could perform should he be required to lie down up to 30 minutes once a day or be

---

[4] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2014). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2014).

Case 2:13-cv-00041-PMS   Document 19   Filed 01/06/15   Page 4 of 21   Pageid#: 702

required to take unscheduled bathroom breaks of 30 minutes each throughout the workday. (R. at 54-55.)

In rendering his decision, the ALJ reviewed records from Richard J. Milan, Jr., Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Louis Perrott, Ph.D., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Wellmont Holston Valley Medical Center; Lonesome Pine Hospital; Gastroenterology Associates; Dr. Galileo Molina, M.D.; Dr. Uzma Ehtesham, M.D.; American Radiological Services; Dr. Michael B. Ford, M.D.; Anne B. Jacobe, L.C.S.W., a licensed clinical social worker; Dr. Kevin Blackwell, D.O.; and Wellmont-Mountainview Regional Medical Center.

On February 20, 2003, Phillips presented to the emergency room at Lonesome Pine Hospital for complaints of severe low back pain. (R. at 359-61.) An MRI of Phillips's lumbar spine showed no abnormalities. (R. at 361.) X-rays of the lumbosacral spine, dated February 4, 2003, were normal, as were x-rays of the left hip. (R. at 362.) Phillips was diagnosed with acute exacerbation of chronic low back pain, probable sciatica. (R. at 359.) On December 2, 2006, Phillips presented to the emergency room for complaints of back and shoulder pain. (R. at 379-80.) On December 5, 2006, an MRI of Phillips's lumbar spine showed no significant focal abnormalities. (R. at 365-66.)

On September 30, 2004, x-rays of Phillips's neck and back were read by American Radiological Services. (R. at 571.) X-rays showed adequate cervical spine disc spacing, a mild L5-S1 disc space decrease and no cervical or lumbar spine fractures. (R. at 571.)

Case 2:13-cv-00041-PMS   Document 19   Filed 01/06/15   Page 5 of 21   Pageid#: 703

On December 20, 2005, Phillips was seen at Wellmont Holston Valley Medical Center, ("Holston Valley"), for colitis. (R. at 347-49.) Phillips reported having four to 10 bowel movements a day. (R. at 347.) Phillips voiced frustration of his continued symptoms, which limited him from leaving his home. (R. at 347.) He reported depression because of his symptoms. (R. at 347.) Examination of Phillips's abdomen showed normal active bowel sounds; no enlargement of the liver and spleen; no ascites or abdominal bruits; and some nonspecific tenderness. (R. at 348.) Dr. R. Douglas Strickland, M.D., diagnosed ulcerative colitis, chronic back pain and situational depression. (R. at 348.) On January 18, 2006, a colonoscopy with biopsy showed distal ulcerative colitis and rectal polyp. (R. at 350-53.) On November 2, 2006, Phillips reported having approximately four bowel movements a day. (R. at 395.) Examination of his abdomen was normal. (R. at 395.) He was diagnosed with ulcerative colitis involving the left colon, back pain and depression, secondary to chronic pain. (R. at 395.) On May 3, 2007, Dr. Strickland noted that Phillips did not take his medications as instructed. (R. at 393.) On September 6, 2007, neurological studies, including motor studies, motor conduction studies, sensory studies and electromyogram, ("EMG"), were normal. (R. at 354.)

In 2008 and 2009, Phillips saw Dr. Uzma Ehtesham, M.D. (R. at 478-97, 540-49.) His reported anxiety ranged from a three to a 10 on a 10-point scale with some paranoia, but Dr. Ehtesham found that Phillips had fair insight, intact judgment, a goal-oriented thought process and no symptoms that impacted his attention. (R. at 478, 480, 482, 484, 486, 488, 490, 495, 540, 542, 544, 546, 548.) Dr. Ehtesham diagnosed major depressive disorder, recurrent, moderate and generalized anxiety disorder. (R. at 484-97.) On August 18, 2008, Dr. Ehtesham assessed Phillips's then-current Global Assessment of Functioning score,

("GAF"),[5] at 60.[6] (R. at 497.) On September 29, 2008, Phillips reported that his mood swings had lessened. (R. at 486-87.) On January 2, 2009, Phillips reported that he worried a lot. (R. at 482.) He stated that he had not slept for more than three hours in five days. (R. at 482.) His affect was reported as anxious and agitated. (R. at 482.) On February 2, 2009, Phillips reported that his symptoms of anxiety had lessened. (R. at 480.)

On February 27, 2009, Dr. Ehtesham completed a mental assessment indicating that Phillips suffered from depression, severe anxiety and mood swings. (R. at 473-77.) Phillips's mood was sad, he had decreased memory and concentration, and his judgment and fund of information were poor. (R. at 474-75.) On April 2, 2009, Phillips reported that he was doing "fairly well." (R. at 548.) He reported that his irritable bowel syndrome symptoms were more controlled; however, he was depressed as a result of the pain. (R. at 548.) On June 1, 2009, Phillips reported that his symptoms of anxiety had worsened, he had decreased sleep, and his pain had worsened. (R. at 544.) On November 16, 2009, Dr. Ehtesham reported that Phillips's ability to relate to family, friends and co-workers was impaired. (R. at 535.) Phillips's mood was sad, he had decreased memory, thought content and organization were within normal limits, he had confusion, decreased concentration, poor judgment and fund of knowledge. (R. at 536-37.)

---

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms … OR moderate difficulty in social, occupational, or school functioning…." DSM-IV at 32.

On March 12, 2008, and April 9, 2008, Phillips was seen by Dr. Galileo Molina, M.D., for complaints of ulcerative colitis, chronic low back pain, anxiety and depression. (R. at 420, 423-24.) Dr. Molina's examination showed full range of motion with no difficulty or pain in the back and lower extremities, only mild back tightness and no tenderness, negative straight leg raising tests, only mild difficulty with toe ambulation and no difficulty with heel ambulation and mild decrease in calf muscle mass on the left side. (R. at 420, 424.) On May 20, 2008, a lumbar spine MRI showed small gallstones in the upper right quadrant, but the disc spaces were well maintained and the pedicles were intact. (R. at 437-39.) X-rays of Phillips's left hip and knee and pelvis were normal. (R. at 437-39.) A full body scan performed on June 17, 2008, showed scoliosis, but otherwise was normal. (R. at 465-66.) On June 12, 2008, and July 17, 2008, Dr. Molina diagnosed chronic low back pain, left lower extremity pain, anxiety and depression. (R. at 417-19.)

On January 6, 2009, Dr. Molina diagnosed malnutrition due to ulcerative colitis; chronic low back pain; chronic left lower extremity pain; muscle wasting, with secondary weakness in the left lower extremity probably atrophy due to disuse; generalized anxiety disorder with major depression; and history of headaches precipitated by stress. (R. at 414.) On January 14, 2009, an upper GI series and small bowel study showed a small hiatal hernia, but otherwise was normal. (R. at 433-34.) A sonogram of Phillips's gallbladder was normal. (R. at 435.) On June 9, 2009, Dr. Molina referred Phillips to a pain management clinic, but Phillips was not interested. (R. at 519.) Dr. Molina concluded that Phillips's refusal to pursue the referral suggested that he did not really want to know the cause of his alleged pain. (R. at 519.) Dr. Molina discharged Phillips, and no prescriptions were given. (R. at 519.)

On October 28, 2008, Phillips was seen at Gastroenterology Associates for complaints of ulcerative colitis and irritable bowel syndrome. (R. at 390-92.) Phillips reported having four to five bowel movements a day, with occasional nocturnal symptoms. (R. at 390.) Phillips reported lower abdominal pain, anxiety, depression, inability to concentrate and suicidal thoughts. (R. at 390-91.) He reported that he would not eat for days due to depression. (R. at 390.) Phillips reported that he had lost five pounds within the past two weeks. (R. at 390.) L. Suzanne Saylor, N.P., a nurse practitioner, reported that Phillips's weight was stable from a 2006 office visit. (R. at 390.) Examination of Phillips's abdomen was normal, he had a normal gait and station, and no neurological deficits were noted. (R. at 391-92.) Salyor reported that Phillips's memory was within normal limits for recent and remote events, and he had no evidence of depression, anxiety or agitation. (R. at 392.) Salyor diagnosed ulcerative proctosigmoiditis and diarrhea. (R. at 392.)

On May 14, 2009, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Phillips at the request of Disability Determination Services. (R. at 499-504.) Lanthorn found that Phillips functioned in the borderline intellectual range, but his communication skills were intact, he socialized with family members, and he performed the tasks necessary to maintain himself. (R. at 503.) Lanthorn opined that Phillips would have only mild difficulties learning and following simple tasks, moderate or greater difficulties in social interaction and mild to moderate difficulties in sustaining concentration and dealing with work-setting changes and requirements. (R. at 503-04.) Lanthorn diagnosed major depressive disorder, recurrent, moderate; panic disorder without agoraphobia; pain disorder associated with both psychological factors and generalized medical condition, chronic; rule out bipolar disorder, not otherwise specified; and

borderline intellectual functioning. (R. at 502-03.) He assessed Phillips's then-current GAF score at 55. (R. at 503.)

On May 28, 2009, Phillips was seen at the emergency room at Holston Valley for complaints of back pain, weakness and weight loss. (R. at 510-13.) Left hip x-rays were normal, and lumbar spine x-rays showed "modestly reduced" disc space at the L5-S1 level, but otherwise were normal. (R. at 512.)

On June 24, 2009, Dr. Robert McGuffin, M.D., a state agency physician, found that Phillips had the residual functional capacity to perform light work. (R. at 64-65.) Dr. McGuffin found no postural, manipulative, visual, communicative or environmental limitations. (R. at 64-65.)

On June 27, 2009, Richard J. Milan, Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), considering whether Phillips suffered from an organic mental disorder, an affective disorder, an anxiety-related disorder and/or a somatoform disorder. (R. at 73-74.) Milan found that Phillips had mild restrictions on his ability to perform activities of daily living. (R. at 73.) He found that Phillips had moderate difficulties in his ability to maintain social functioning and in maintaining concentration, persistence or pace. (R. at 73.) Milan found that Phillips had not experienced repeated episodes of decompensation for extended duration. (R. at 73.)

That same day, Milan completed a mental assessment indicating that Phillips was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be

punctual within customary tolerances, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to respond appropriately to changes in the work setting. (R. at 76-78.) Milan noted that Phillips was able to interact adequately with others to complete simple work routines in a setting with limited social contact. (R. at 77.) He opined that Phillips was capable of understanding and remembering instructions, concentrating, persisting at work duties to completion, interacting appropriately with people and adapting to changing activities within the workplace. (R. at 78.) Milan opined that Phillips was able to meet the basic mental demands of competitive work on a regular, ongoing basis. (R. at 78.)

On September 1, 2009, Phillips saw Dr. Michael B. Ford, M.D., for complaints of "nerves" and ulcerative colitis. (R. at 554.) On October 26, 2009, Phillips reported that he was not doing well. (R. at 552.) He stated that he wanted "to get off Lortab if he can." (R. at 552.) On March 23, 2010, Phillips was diagnosed with colitis and chronic neuropathy in his legs. (R. at 587.) On May 11, 2010, an MRI of Phillips's lumbar spine showed disc bulges at the lower lumbar spine with no focal disc extrusion, nerve root compression or spinal stenosis. (R. at 565-66.) An MRI of Phillips's left knee showed a small amount of edema superficial to the patellar ligament with no evidence of internal derangement. (R. at 567.) An MRI of Phillips's left hip was normal. (R. at 567-68.) On August 16, 2010, Phillips complained of left leg pain and increased depression. (R. at 585.) He

stated that he fell when his left hip and leg "gave way." (R. at 585.) Dr. Ford noted that Phillips had a scrape on his left upper arm and chest. (R. at 585.) Dr. Ford reported that it appeared that Phillips had fallen. (R. at 585.) On October 31, 2010, a CT scan of Phillips's abdomen and pelvis showed mild bladder wall thickening. (R. at 560-61.) On November 15, 2010, Phillips complained of back pain. (R. at 580.) He was instructed to apply heat and cold to his back for additional pain relief, as well as to change positions frequently when sitting or standing. (R. at 580.) Dr. Ford diagnosed post-traumatic arthritis of the spine, chronic pain in the left knee, hip and foot and L5-S1 level neuropathy secondary to bulging discs. (R. at 580.) On December 14, 2010, Dr. Ford noted that Phillips's gait was "very" unsteady, his speech was slurred, and he wanted to discuss pain medications. (R. at 578.) Dr. Ford diagnosed significant neuro-psychiatric illness, smiling excessively; left leg neuropathy, post-traumatic arthritis; chronic left knee, hip and foot pain; and L5-S1 level neuropathy. (R. at 578.) On January 14, 2011, Phillips continued to complain of lower back pain. (R. at 577.) He was diagnosed with severe depression, neuropathy and post-traumatic arthritis. (R. at 577.) On February 15, 2011, Phillips complained of left hip and low back pain. (R. at 576.) On April 14, 2011, Dr. Ford submitted a letter addressed to Phillips's counsel. (R. at 595.) He stated that Phillips complained of back pain that radiated down his left hip and left leg. (R. at 595.) Dr. Ford stated that Phillips had significant neuropathy. (R. at 595.) Dr. Ford opined that Phillips's alleged pain was not as serious as his apparent physiatric illness. (R. at 595.) He also stated that Phillips had a significant degree of psychoeffective disorder with agoraphobia. (R. at 595.)

On December 7, 2009, Louis Perrott, Ph.D., a state agency psychologist, completed a PRTF, considering whether Phillips suffered from an affective disorder, mental retardation, an anxiety-related disorder and/or a somatoform

disorder. (R. at 103-04.) Perrott found that Phillips had mild restrictions on his ability to perform activities of daily living. (R. at 103.) He found that Phillips had moderate difficulties in his ability to maintain social functioning and in maintaining concentration, persistence or pace. (R. at 103.) Perrott found that Phillips had not experienced repeated episodes of decompensation for extended duration. (R. at 103.)

That same day, Perrott completed a mental assessment indicating that Phillips was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or in proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to respond appropriately to changes in the work setting. (R. at 106-08.) Perrott noted that Phillips was able to interact adequately with others to complete simple work routines in a setting with limited social contact. (R. at 107.) He found that Phillips was able to adjust to changes at work, maintain safety, negotiate travel and make relevant work plans. (R. at 108.) Perrott also found that Phillips was able to concentrate and persist at simple work tasks with reasonable effectiveness with only occasional disruption by his symptoms. (R. at 107.) Perrott opined that Phillips had the capacity to perform simple, routine work in a setting involving limited social interactions. (R. at 108.)

On December 7, 2009, Dr. Richard Surrusco, M.D., a state agency physician, found that Phillips had the residual functional capacity to perform light work. (R. at 92-93.) Dr. Surrusco found no postural, manipulative, visual, communicative or environmental limitations. (R. at 92-93.)

On August 16, 2011, Anne B. Jacobe, L.C.S.W., a licensed clinical social worker, completed a mental assessment indicating that Phillips had a seriously limited ability to follow work rules, to use judgment, to interact with supervisors, to function independently, to understand, remember and carry out simple job instructions, to maintain personal appearance and to demonstrate reliability. (R. at 597-99.) Jacobe opined that Phillips had no useful ability to relate to co-workers, to deal with the public, to deal with work stresses, to maintain attention/concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 597-98.) She noted that Phillips would miss more than two workdays a month due to his impairments. (R. at 599.) Jacobe noted that Phillips was easily angered, impulsive and had poor memory and concentration skills. (R. at 597.)

On September 5, 2011, Dr. Kevin Blackwell, D.O., examined Phillips at the request of Disability Determination Services. (R. at 602-05.) Dr. Blackwell noted that Phillips was in no acute distress. (R. at 604.) Phillips's mental status was reported as good. (R. at 604.) Phillips had a symmetrical and balanced gait, and his upper and lower joints had no effusions or obvious deformities. (R. at 604.) Phillips's grip strength was normal, and his fine motor movement skill activities of the hands were normal. (R. at 604.) Dr. Blackwell opined that Phillips could occasionally lift and carry items weighing 45 pounds and frequently lift and carry

items weighing 20 pounds. (R. at 605.) He opined that Phillips could sit for up to six hours in an eight-hour workday and stand for up to two hours in an eight-hour workday assuming normal positional changes. (R. at 605.) Dr. Blackwell opined that Phillips could operate a vehicle, bend at the waist, kneel, perform above-head reaching activities and operate foot pedal controls up to one-third of the day. (R. at 605.) He found that Phillips should avoid squatting, stooping, crouching, crawling and working at unprotected heights. (R. at 605.) Dr. Blackwell found no visual, communicative, hearing or environmental limitations. (R. at 605.) Dr. Blackwell stated that Phillips had reached maximum medical improvement, and a significant change in his limitations would not be anticipated over the next 12 months. (R. at 605.)

Dr. Blackwell completed a medical assessment indicating that Phillips could continuously lift and carry items weighing up to 10 pounds, frequently lift and carry items weighing up to 20 pounds and occasionally lift and carry items weighing up to 50 pounds. (R. at 606.) He indicated that Phillips could sit a total of six hours in an eight-hour workday and that he could do so for up to one hour without interruption. (R. at 607.) Dr. Blackwell found that Phillips could stand for a total of two hours in an eight-hour workday and that he could do so for up to one hour without interruption. (R. at 607.) He found that Phillips could walk a total of two hours in an eight-hour workday and that he could do so for up to 10 minutes without interruption. (R. at 607.) Dr. Blackwell opined that Phillips could occasionally reach overhead and push/pull and frequently reach in all directions, handle, finger and feel. (R. at 608.) He found that Phillips could occasionally operate foot controls. (R. at 608.) Dr. Blackwell opined that Phillips could occasionally balance and kneel and never climb, stoop, crouch and crawl. (R. at 609.) He found that Phillips could frequently work around humidity and wetness,

-15-

dust, odors, fumes and pulmonary irritants, extreme cold and heat, vibrations and noise; occasionally operate a motor vehicle; and never work around unprotected heights and moving mechanical parts. (R. at 610.)

On November 26, 2011, Phillips presented to Wellmont-Mountainview Regional Medical Center with complaints of chest pain and back pain. (R. at 614-40.) Phillips reported that he was "out of Percocet." (R. at 615.) A chest x-ray showed no active cardiopulmonary disease. (R. at 632.) He was diagnosed with atypical chest pain. (R. at 616.) Upon discharge, Phillips denied pain. (R. at 617.)

## III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2014). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2014).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that

the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The ALJ found that Phillips had the residual functional capacity to perform simple, unskilled light work, that required no more than casual interaction with others. (R. at 19.) In his brief, Phillips argues that the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-7.) Phillips further argues that the ALJ improperly gave little or no weight to the opinions of Dr. Ford, Dr. Blackwell and social worker Jacobe. (Plaintiff's Brief at 7.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Phillips argues that the ALJ erred by failing to give greater weight to the opinions of Dr. Ford, Dr. Blackwell and Jacobe. (Plaintiff's Brief at 7.) The ALJ

found Dr. Ford's opinions to be inconsistent with the record as a whole and with his own progress notes. (R. at 21.) The ALJ gave limited weight to the restrictions given by Dr. Blackwell, which limited Phillips to sedentary work, because Dr. Blackwell's restrictions were inconsistent with the content of his report and the medical evidence of record. (R. at 21.) In addition, the ALJ gave no weight to the assessment of licensed clinical social worker Jacobe because the record does not contain any progress notes from her and because the assessment was contrary to the consultative examination by Lanthorn and the treatment notes of Dr. Ehtesham. (R. at 19.)

A medical opinion is entitled to greater weight when it is supported by relevant evidence, "particularly medical signs and laboratory findings," and when it is consistent with the "record as a whole." 20 C.F.R. §§ 404.1527(c)(2)-(4). 416.927(c)(2)-(4) (2014). A medical opinion from an acceptable treating source is given "controlling" weight only when it is "well-supported" by "medically acceptable clinical and laboratory diagnostic techniques" and when it is "not inconsistent" with the other "substantial" evidence in the case. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Dr. Ford's treatment notes do not reflect any musculoskeletal or neurological testing, such as range of motion or straight leg-raise testing. (R. at 575-92.) Dr. Molina, who treated Phillips immediately prior to Dr. Ford, did conduct such testing. Dr. Molina's examinations showed full range of motion with no difficulty or pain in the back and lower extremities, only mild back tightness and no tenderness, negative straight leg-raising tests, only mild difficulty with toe ambulation and no difficulty with heel ambulation and only a mild decrease in calf muscle mass on the left side. (R. at 420, 424.) Dr. Blackwell's musculoskeletal and

joint examination revealed that Phillips's gait was symmetrical and balanced, and his upper and lower extremities exhibited normal strength, fine motor movement and reflexes. (R. at 604.) Phillips's range of motion throughout was normal. (R. at 601.) However, Dr. Blackwell opined that Phillips could stand for only two hours in an eight-hour workday and should avoid squatting, stooping, crouching, crawling and working around unprotected heights. (R. at 605.) Drs. McGuffin and Surrusco both determined that Phillips could sit about six hours in an eight-hour workday and noted no postural limitations. (R. at 75, 92-93.) Diagnostic testing in May 2009 showed only "modestly reduced" L5-S1 disc space. (R. at 512.) In May 2010, a cervical MRI showed a shallow disc bulge without significant spinal stenosis at the C5-C6 disc space, mild foraminal narrowing at the C5-C6 disc space and minimal disc degeneration at the C6-C7 disc space. (R. at 565.) A lumbar MRI showed disc bulging, but no extrusion, nerve root compression or spinal stenosis. (R. at 566.) A left knee MRI showed a small amount of superficial edema, but no internal derangement, meniscal tears, ligament tears or joint effusion. (R. at 567.) A left hip MRI revealed an intact left hip with no joint effusion, fracture, fluid or other abnormalities. (R. at 567-68.)

The record further shows that in October 2008, Salyor reported that Phillips's weight was stable from a 2006 office visit. (R. at 390.) Examination of Phillips's abdomen was normal, he had a normal gait and station and no neurological deficits. (R. at 391-92.) In January 2009, Phillips reported to Dr. Molina that his bowel movements were more formed and less frequent. (R. at 414.) A January 2009 upper GI series and abdomen study showed a small hiatal hernia, but Phillips's swallowing, esophagus distension, gastroesophageal reflux and stomach mucosal pattern all were normal. (R. at 433-34.) Phillips stated at his hearing that he was currently bleeding, but he admitted that he had not been to the

doctor or hospital because of his alleged bleeding. (R. at 36-38.) He admitted that he was no longer taking any medication for ulcerative colitis. (R. at 40-41.)

Dr. Ford opined that Phillips's agoraphobia would prevent him from working in any social environment. (R. at 595.) As the ALJ discussed, this opinion is not supported by the findings of the treating psychiatrist and the consultative psychologist. (R. at 21.) In 2008 and 2009, Dr. Ehtesham consistently found that Phillips had fair insight, intact judgment, a goal-oriented thought process and no symptoms that impacted his attention. (R. at 478, 480, 482, 484, 486, 488, 490, 495, 540, 542, 544, 546, 548.) In October 2008, Salyor reported that Phillips's memory was within normal limits for recent and remote events, and he had no evidence of depression, anxiety or agitation. (R. at 392.) In addition, Lanthorn's evaluation showed that Phillips's communication skills were intact, he socialized with family members, and he performed the tasks necessary to maintain himself. (R. at 503.) Lanthorn opined that Phillips had only mild difficulties learning and following simple tasks, moderate or greater difficulties in social interaction and mild to moderate difficulties in sustaining concentration and dealing with changes and requirements in a work setting. (R. at 503-04.) In addition, state agency psychologists Milan and Perrott opined that Phillips was capable of interacting adequately with others and to complete simple work routines in a setting with limited social contact. (R. at 77, 107.)

Based on this, I find that substantial evidence supports the weighing of the evidence by the ALJ. That being so, I further find that substantial evidence supports the ALJ's finding as to Phillips's residual functional capacity and his finding that he was not disabled. An appropriate order and judgment will be entered.

DATED:     January 6, 2015.

_/s/  Pamela Meade Sargent_
UNITED STATES MAGISTRATE JUDGE